1. **Practice — Transfer of Causes — Judicial Prejudice.** — Since the adoption of the amendment to section 16 of article 5 of the Constitution, the right of a defendant in a criminal case to a transfer of his case from the County to the District Court on account of the disqualification of the county judge based upon prejudice has ceased to exist.

2. **Same.**—Nor is the prejudice of the trial judge ground for reversal of a conviction unless such prejudice is based upon the property interest.

3. **Same—Change of Venue.**—In so far as a different rule obtains in certain other of the States, entitling a defendant to a change of venue because of the prejudice of the trial judge, it is based upon statutory provisions, and the prejudice must be against the person, and not the cause or defense of a party. Texas has no statutory provisions fixing such judicial disqualifications. Article 569 of the Code of Criminal Procedure alone declares the disqualifications of a judge to preside at a trial, confining them to cases in which he was the party injured, or where he has been of counsel, or where he is related by consanguinity or affinity within the third degree to the accused or the injured party. And under articles 576 and 578 of the Code of Criminal Procedure, the right to a change of venue is confined to felony cases, and they do not include prejudice of the trial judge.

4. **Same — Practice in Court of Criminal Appeals.** — But while the alleged prejudice of the trial judge is not a disqualification, still when the motion impeaching his capacity to preside fairly at the trial specifies the grounds upon which it is based, it devolves upon the appellate court to closely inspect the record, to the end that no injustice done to the rights of the defendant may be allowed to stand.

5. **Same—New Trial.**—One of the grounds of prejudice set up in the motion to transfer this case was, that at the former trial the jury, upon a verdict of guilty, assessed a fine of $250 against the defendant, and that in awarding the new trial applied for the judge refused it on the ground set up in the motion, but granted it upon his own motion, as he stated from the bench, because the penalty assessed was totally inadequate. This action of the trial judge was not an abuse of his discretion, and does not constitute cause for reversal. It would have been otherwise had the judge made his statement in the presence of the persons subsequently empanelled as jurors for the trial of this case.

6. **Same.**—Nor is it cause for reversal that immediately after setting aside the first verdict the trial judge increased the defendant's bail bond to an amount beyond his ability to give. The defendant's remedy by habeas corpus to reduce bail was not affected by this action of the court.

7. **Same.**—Nor is it cause for reversal as prejudicing the rights of the defendant that on the first trial the court required the counsel for the defendant to testify, and forthwith caused his arrest for perjury, of which charge the counsel was subsequently acquitted—the record failing to show that the evidence sought by the State was of a confidential nature, or was otherwise improper.

8. **Same—Jury Commissioners.**—Under the statutes of this State the judge of the County Court is required to appoint jury commissioners at the first term after December 31 and June 30, to select jurors to serve at the terms six months after the adjournment of the terms at which such commissioners were appointed; and it is only when the jury commissioners have not been so

appointed, or fail to act, or the panels are set aside, or the jury lists lost, that the court may appoint commissioners to select other jurors. Neither presumptive nor actual prejudice of the sheriff or his deputies, nor other cause than one or more of those enumerated, will authorize the appointment of jury commissioners at other than the times fixed by law.

9. **Same — Continuance—Libel.**—Prosecuted for libel, the accused applied for a continuance to produce a witness to testify, among other things, to the "notoriously bad character" of the libelee. The correctness of the ruling of the court refusing the continuance must be tested by the libelous matter set out in the indictment. In this case the defendant's right to prove the truth of the libelous matter would rest upon the claim that the information charged the defendant with libeling P. as a "notoriously bad character." Such matter is not charged in the information. Moreover, the continuance was sought for a single witness, to prove the notorious character of the libelee, whereas it would seem that if such character was "notorious" it could have been proved by other than the absent witness. The continuance was properly refused.

10. **Same—Evidence.**—It is complained of as error that the court excluded evidence of certain suits instituted by a prostitute against the libelee, and subsequently compromised, and the exclusion of proof that the "libelee was a terror to houses of prostitution." The evidence in both instances was properly excluded—in the first instance as wholly immaterial, and in the second as not warranted by any allegation in the information.

APPEAL from the County Court of Dallas. Tried below before Hon. E. G. BOWER, County Judge.

The conviction in this case was for circulating a libel, and the penalty assessed was a term of sixty days in the county jail.

The sum and substance of the information in this case is, that the defendant wrote and caused to be published in the Kansas City Sunday Sun, a sensational newspaper, and then circulated, a defamatory and libelous article, in effect charging one Owen L. Parry and George Anzy, reputable citizens of Dallas, Texas, with gross immoralities—that they were men who dared "to invade the society of reputable people, while prostitutes visit their places of business with unpaid bills for services sold and delivered." The article, which was signed by the defendant, was otherwise an appeal to the "respectable people" of Dallas, fathers, mothers, sons, and brothers, to aid the "Sun" in its crusade against the "scamps," "scoundrels," "rascals," "seducers," etc., to protect the female virtue of the city of Dallas. This prosecution was for circulating the said libel as to Parry.

The evidence is voluminous, and while interesting as a sample of sensationalism in court, it is in no degree essential to this report. It is sufficient to state that the proof clearly established the guilt of the defendant; first, by showing the article over defendant's own signature; second, by his confessions made on two different occasions; and third, by his proposition to prove the truth of the matter alleged as libel.

In so far as it treats of the questions considered in the opinion of the court, the brief for the appellant is set out below.

*Edwards & Blewett*, for appellant.—1.   The court erred in overruling defendant's motion to transfer this cause to the District Court of Dallas County, the ground of the motion being that the county judge was' disqualified to sit and try the same.

This assignment will be treated as a proposition.

On hearing defendant's motion for a new trial on his first conviction for the matters charged in this case, the trial judge stated from the bench that there was no merit in defendant's motion, but if guilty at all, the fine of $250 which had been assessed against him was entirely inadequate. Verdict set aside on court's own motion, and defendant's bond was then raised from $2000 to $3000, although he had been unable to give bail in the first amount, thus causing defendant to have to lie in jail several months. On that first trial of the case, the county judge compelled defendant's then counsel, a Kansas City lawyer, to testify for the State.   Failing to give satisfaction as a witness, this attorney was indicted for perjury, and the county judge appeared as a witness against him, but admitted on cross-examination that he had compelled the lawyer to testify against his client, this defendant.   The judge was also mentioned unfavorably in one of the articles charged against defendant as libel.   Rev. Stats., arts. 1138, 1139.

2.  The court erred in overruling defendant's motion to continue or postpone this cause, such motion being grounded upon defendant's inability to secure a jury selected by jury commissioners, and because he had been denied such right.

The defendant was entitled to a jury selected by commissioners; and it was error to deny him that right, or any other calculated to give him an impartial jury.

Defendant's demand for the appointment of commissioners to select the jury who were to try him was first made on the 11th day of August, 1891, when this case was pending as No. 13,952, and the court's attention was immediately called thereto.   On the 17th day of September thereafter the original prosecution was dismissed and a new information filed as No. 14,213.   On the 30th day of January the motion was renewed, and at the February Term of court denied.   On February 13, 1892, a list of twelve jurors was drawn by commissioners and delivered to the sheriff, returnable February 15, the intervening day being Sunday.   Only eight of the drawn jurors were summoned.   Four of these presented excuses and were excused.   The rest of the jury were picked up by the sheriff, to whom and to whose deputies defendant objected as improper parties to select a jury in his case, because of their prejudice against him.   In all his cases defendant had been tried by these picked-up juries from within the corporate limits of the city of Dallas and its immediate vicinity; and he complained that though there were proper men for jurors in Dallas County, he was unable to obtain them.   For these reasons he desired a postponement or a continuance.   As to commissioners to select jurors:

Rev. Stats., art. 3027 et seq. As to defendant's right to an impartial jury: Bill of Rights, sec. 10.

3. The court erred in overruling defendant's motion for a continuance on the grounds: (1) That the case was called out of its regular order. (2) That he had not had time to prepare his defense. (3) That he had not been able to obtain a lawful jury. (4) The absence of a material witness.

Defendant showed himself entitled to a continuance, and his motion should have been granted.

The motion was for a first continuance. The last information had been filed on (Saturday) the 13th of February, 1892. The case was called for trial on February 15. This motion was filed on the 16th. Defendant complained, that the case being set for trial so early after filing, he had not had time to prepare his defense. That he had already been tried once at this term on the same charge, and convicted; that the conviction had been set aside, and he was entitled to a continuance by reason thereof. That he had been unable to obtain a lawful jury; and that he needed the testimony of one Grace Page, who, until lately, had resided in Dallas, but was now absent; that his information was that she was now in Paris or Texarkana, and he had not been able to verify it and have an attachment issued, having so lately received it. That he expected to prove by her that the matters alleged in the information as libel were true; also, that the papers alluded to in the libelous article as containing a truthful expose of the doings of libelee at the house of Essie Watkins were; the general tenor of such testimony being to show the notoriously bad character of libelee. The formal parts of the application were, we think, in compliance with the statute. As to trying causes in their regular order: Kirkland v. Sullivan, 43 Texas, 233. A party seeking revision of the court's action in this respect must show that he was injured. Railway v. Shuford, 72 Texas, 165; Rev. Stats., art. 1287. As to the sufficiency of the application: Code Crim. Proc., art. 560.

5. The court erred in refusing to permit defendant to prove the truth of the statements charged as libel; also in refusing to permit defendant to prove the truth of another article on the first page of the said newspaper, to which the alleged libel referred, and a part of which was put in evidence by the State; and in excluding proof offered by defendant to show the truth of both said statements; and that O. L. Parry, the alleged libelee, was a person of notoriously bad character.

The evidence offered was admissible, and should not have been excluded.

The proposed evidence will be found in bill No. 4, and is directed to establishing the truth of the article complained of, by showing facts that constitute notoriously bad character of libelee; also to show that he had committed the offenses of fornication, malicious mischief, and disturbing

the peace, as charged in the original article on the first page of the same newspaper.

The State introduced part of the original first page article. Defendant then introduced the whole of it, and proposed to prove the truth of the whole of it, as well as of the article embodied in the information, which refers to the first one as a "truthful expose," etc. On defendant's right to show the truth of the libelous statements: Penal Code, art. 622, secs. 2, 3.

6. The court erred in overruling defendant's motion for a new trial, such motion presenting, amongst others not here urged, substantially the grounds set forth in the foregoing assignments.

This assignment may be considered both as a proposition and statement, and it is believed that the errors already discussed abundantly support it.

7. The court erred in not setting aside the verdict and judgment, on the further ground that the evidence given on the trial was not sufficient to sustain the same.

The evidence does not show that defendant published or circulated the libel complained of in Dallas County, nor do we think it showed any criminal act on his part within the county.

The witness Spence testifies, that he saw the papers containing the libel in Dallas, and that defendant, before their appearance, was at his office as a newspaper man, inquiring for papers in two suits that Essie Watkins had brought against O. L. Parry. He also identified a portion of the first page article relating to defendant's visit to his office.

I. A. Moore testified, that defendant examined the papers in the Watkins suits against Parry at the sheriff's office.

John F. Cole testified, that when Strohm, the Kansas City lawyer, remarked to defendant that the article should not have been written, he replied, that it was the kind of correspondence that Preston (the editor) wanted. Also, that upon being censured by witness, defendant did not deny that he had written either article. And that the defendant admitted that the information upon which he based the first article was received from parties here in town.

Essie Watkins swore that defendant told her that he wrote it here and telegraphed it from Fort Worth to the Sun.

Now, under these facts, was the mere writing of the article "here" an offense? Was there any publication of it until delivered to the telegraph office at Fort Worth; and is Fort Worth, in the absence of evidence to that effect, to be presumed to be in Dallas County? Mr. Miller, State's counsel, testified that this paper says H. L. Preston is the editor, etc. It was in evidence that the paper was the Kansas City Sunday Sun. Did these facts, or any or all of them, show that defendant did acts in Dallas County amounting to criminal libel in any event?

*R. L. Henry*, Assistant Attorney-General, for the State.

SIMKINS, JUDGE.—1. The appellant was convicted of circulating a libel, and was sentenced to sixty days confinement in the county jail, from which judgment he appeals to this court.

Appellant complains of the error of the court in overruling his motion to transfer this cause to the District Court of Dallas on account of the personal prejudice of the county judge against the defendant. We are of the opinion that the court did not err in refusing to transfer the cause to the District Court. Since the adoption of the constitutional amendment, the right to transfer on account of the disqualifications of the county judge has ceased. Last clause, sec. 16, art. 5, Const. But admitting the prejudice of the trial judge, is the defendant entitled to a reversal of the cause? It seems to be the law, that in the absence of statutory provisions, prejudice not based on the property interest is not a legal disqualification. McCauley v. Weller, 12 Cal., 500; Cooper v. Brewster, 1 Minn., 94; Allen v. Reilly, 15 Nev., 452.

In some States, bias or prejudice on the part of the judge is held, under statutory provisions, to be a sufficient ground for change of venue. McGoon v. Little, 7 Ill., 42; Curran v. Beach, 20 Ill., 259; Goldsby v. The State, 18 Ind., 147; Vanderkarr v. The State, 51 Ind., 91; Berner v. Frazier, 8 Iowa, 77; Turner v. Hitchcock, 20 Iowa, 310; Runals v. Brown, 11 Wis., 193; Ex Parte Curtis, 3 Minn., 274 (Gil., 188); In re Peyton, 12 Kan., 398.

But the prejudice must be against the person, and not the cause or defense of a party. Bent v. Lewis, 15 Mo. App., 40. In California, where the statute allows a change of venue "where there is reason to believe an impartial trial can not be had therein," also "when from any cause the judge is disqualified, the court say the exhibition by a judge of partisan feeling, or the unnecessary expression of an opinion upon the justice of a controversy, though undecorous and improper, and calculated to bring the administration of justice into contempt, is not sufficient to authorize a change of venue." Its liability to abuse has induced many States to refuse to allow such a disqualification. The earnestness of a judge in cutting off frivolous objections, or forcing unwilling defendants to trial, especially in cases involving much feeling, may be easily mistaken for personal prejudice. Texas has no such judicial disqualifications (article 569, Code of Criminal Procedure, declaring that no judge shall sit in any case where he may be the party injured, or where he has been of counsel, or where he is related by consanguinity or affinity within the third degree to the accused or injured party); and the change of venue is limited to felony cases, and does not include the prejudice of the judge. Code Crim. Proc., arts. 576, 578.

But while it is true that it may not be a disqualification, yet such a

motion as the one in the record, distinctly specifying the grounds upon which it is based, should invoke from the court a very careful scrutiny of all the proceedings, to see that no injustice has been done to defendant's rights.

In examining the specific grounds upon which the charge of prejudice was predicated, we find that on the first trial of this cause, the jury having assessed a fine of $250 against defendant, the court, of its own motion, as he stated from the bench, set aside the verdict as totally inadequate, and granted a new trial. Appellant applied for a new trial, and the trial judge granted it. The fact that he refused to grant it on the grounds set out in appellant's motion, but granted it for a reason satisfactory to himself, does not affect the matter. If, however, it had appeared that the remarks of the court were made in the presence of persons subsequently empanelled as jurors in this cause, this case would be reversed.

Again, the fact that the court, immediately after setting aside the verdict, raised the defendant's bond from $2000, which he was unable to give, to $3000, thus insuring his being detained in custody, can not reverse this case. Defendant had a sufficient remedy by habeas corpus to reduce bail.

Nor does the fact that he compelled Strohm, attorney for defendant, to testify on the first trial, and caused him forthwith to be arrested for perjury, of which he was subsequently acquitted in the District Court, constitute any ground for a reversal of this case. The record does not show that the evidence sought by the State from said attorney was of a confidential nature, and it was not proper testimony, or that defendant's rights in this case were in any way prejudiced by the arrest and acquittal of his attorney prior to this trial.

2. Appellant further complains of the error of the court in overruling his motion to appoint jury commissioners to select the jury by which he was to be tried. We are aware of no statute of this State that gives every individual a right to have jury commissioners appointed for his individual benefit, although he may believe that the sheriff is prejudiced against him. The statute requires the jury commissioners to be appointed by the County Court at the first term after December 31 and June 30, to select the jurors to serve at the terms to be held six months after that term shall have ended. Rev. Stats., arts. 3027, 3029. And it is only where the jury commissioners are not appointed, or fail to act, or the panels are set aside, or the jury lists lost, that the court may appoint jury commissioners to select other jurors. Rev. Stats., art. 3022.

It is not shown that any of these contingencies had occurred. It seems that the demand for a jury commission was predicated entirely on the presumed prejudice on part of the sheriff and his deputies against appellant. If such prejudice existed, it could not have conferred a right on appellant to have demanded a jury commission.

3. Appellant complains that the court erred in overruling his motion for continuance, which was made on account of the absence of a certain witness, by whom he expected to prove the truth of the libel, and that Parry was a terror to houses of prostitution. The correctness of the ruling of the court is to be tested by the libelous matter set out in the indictment. If the libel, as charged, does not come within one of the classes in which the statute permits the truth of the libel to be proven, then the defendant had no right to a continuance. The only ground upon which appellant can claim the right to prove the truth of the libel is, that it charges Owen L. Parry to be a person of notoriously bad character. Penal Code, art. 642, sec. 3.

A careful examination of the libel shows that such is not the fact. On the contrary, it purports to be an expose of an evil life, then unknown to the public, but which the libelant proposes to fully ventilate for the good of society. Appellant sought a continuance on account of *one* witness; it certainly seems that if libelee's character was *notoriously* bad, appellant would have no difficulty in securing any number of witnesses to that fact. We do not think, therefore, that the court erred in overruling the motion.

4. Nor do we think the court erred in ruling out the testimony of Essie Watkins, as to the suits brought by her against Parry; they form no part whatever in this case, and could serve no purpose in justifying or explaining the libel upon which the information is based.

For the same reason the fact that she did or did not compromise her suits, is in no way material to the present inquiry; nor was the proof that said Parry was a terror to houses of prostitution. There is no such charge in the present libel. We do not think the errors assigned in the fourth bill of exceptions are well taken.

5. Appellant complains that he was injured by the charge of the court, and that it was erroneous in many particulars. While the charge is incorrect in several particulars, yet so far as the law of this character of libel is concerned, it is correctly laid down.

6. There are no reversible errors, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.